## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WESTWAY HOLDINGS                  :
CORPORATION and WESTWAY           :
TRADING CORPORATION,              :
                                  :
      Plaintiffs,            :    CIVIL ACTION
                                  :
  v.                            :    No. 08-cv-841
                                  :
TATE AND LYLE PLC, TATE &         :
LYLE NORTH AMERICAN SUGARS LTD.,  :
and TATE & LYLE INDUSTRIES        :
                                  :
      Defendants.            :


### MEMORANDUM and ORDER

**Joyner, J.**                                    **May 13, 2009**

     Before this Court is Defendants' Motion to Dismiss pursuant
to Fed.R.Civ.P. 12(b)(6) (Doc. No. 7), Plaintiffs' Response in
Opposition (Doc. No. 11), and Defendants' Reply thereto (Doc. No.
16).  For the reasons set forth in the following memorandum, we
will GRANT in part and DENY in part.

### Standard

     In response to a pleading, under Federal Rule of Civil
Procedure 12(b)(6), a Defendant may assert by motion that the
Plaintiff's complaint "[fails] to state a claim upon which relief
can be granted."  In analyzing a Rule 12(b)(6) motion to dismiss,
we "accept all factual allegations as true, construe the
complaint in the light most favorable to the plaintiff, and

1

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" Id. at 232 (quoting Bell Atl. Corp. v. Twombley, 127 S. Ct. 1955, 1965, 167 L. Ed. 929, 940 (2007)). In other words, the plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action. Id. at 234. In ruling on a Rule 12(b)(6) motion to dismiss, the court may consider documents "integral to or explicitly relied upon in the complaint." In re Rockefeller Sec. Lit., 184 F.3d 280, 287 (3d Cir. 1999).

In assessing the contract claims at hand, this Court will use Illinois law, as specified by the choice of law provision within the Noncompetition Agreement between plaintiffs and defendants. "Delaware courts will generally honor a contractually-designed choice of law provision as long as the jurisdiction selected bears some material relationship to the transaction." Childcraft Educ. Corp. v. Alice's Home, No. 05-461, 2006 U.S. Dist. LEXIS 45672, 2006 WL 1452802, at *5 (D.Del. May 22, 2006) (quoting J.S. Alberici Construction Co. v. Mid-West Conveyor Co., 750 A.2d 518, 520 (Del. 2000)). Defendants assert

2

that Illinois law bears a material relationship to the present case because A.E. Staley Manufacturing Company ("Staley") was one of the parties and signatories to the Noncompetition Agreement and has its principle place of business in Decatur, Illinois. Further, the T&L Group is defined to include Staley and Tate & Lyle Ingredients Americas, Inc., (formerly Staley) whose principle place of business is Decatur, Illinois, was a party and signatory to the Fourth Amendment to the Agreement, the provision at issue here.

Plaintiffs, in a footnote, appear to suggest that Illinois law should not apply because "neither the parties nor allegations of conduct have any relationship to Illinois." Pl. Resp. 7, n.3. However, plaintiffs do not dispute that the parties have contractually agreed to Illinois law and do not directly challenge its use in the instant case; instead, plaintiffs argue, in the alternative, that the outcome of the motion would be the same under Delaware law. In light of the material relationship outlined by defendants and the clear choice of law provision in the Agreement, we rely on the contractual choice of law provision in the Agreement.

## Background[1]

Plaintiffs Westway Holdings Corporation and Westway Trading

---

[1] In analyzing a motion to dismiss, we accept all factual allegations made by the plaintiffs as true. <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008).

Corporation filed their Complaint against Defendants Tate and Lyle PLC, Tate & Lyle North American Sugars Ltd., and Tate & Lyle Industries, on November 12, 2008, in the District Court of Delaware.  Plaintiffs Westway Holdings Corp. and Westway Trading Corp. (collectively "Westway") are Delaware corporations with their principle places of business in New Orleans, Louisiana. Defendants Tate and Lyle PLC (T&L) and Tate & Lyle Industries Ltd. ("TLI") are corporations organized and existing under the laws of England and Wales, while Defendant Tate & Lyle North America Sugars Ltd. ("Redpath") is a corporation organized and existing under the laws of the Province of New Brunswick, Canada.

Westway and T&L are both, among other activities, in the business of trading molasses worldwide.  Prior to December 19, 2002, the United Molasses Company ("United Molasses") was a wholly owned subsidiary of T&L and engaged in the business of trading molasses, bulk liquid storage and production of animal feed in North and Central America.  On December 19, 2002, Westway Holdings Corp. purchased all of the outstanding capital stock of United Molasses from T&L and United Molasses became a wholly owned subsidiary of Westway Holdings Corp.  United Molasses was then renamed Westway Trading Corp.  As part of the stock purchase, and as a condition precedent to the sale, Westway and defendants entered into the Noncompetition Agreement ("the Agreement") at issue in this case.  The Agreement is incorporated

4

into the Complaint and lays out the parameters of the noncompetition arrangement between Westway and T&L.  The Agreement was in force as of December 2002.

Shortly thereafter, between December 2002 and March 2003, T&L participated in four purchases and shipments of molasses that originated in the "Restricted Area," as defined by the Agreement. They also contracted to purchase another shipment of molasses from a Restricted Area, Florida, in October or November of 2003. Westway then claimed that the purchases/shipments and contracts to purchase in the Restricted Area constituted a breach of the Noncompetition Agreement.  The parties settled this dispute and in full and final settlement of Westway's damages, the parties agreed, *inter alia*, to a case settlement in favor or Westway and to amend the Agreement to add Section 4(b)(x) to the list of exceptions to the noncompetition covenants of Section 4(a). Section 4(b)(x) allowed T&L to purchase molasses in Florida, but required that it be shipped outside of the Restricted Area and required a set fee of two dollars and fifty cents ($2.50) from T&L to Westway for each ton of molasses shipped from Florida.

After this provision was in place, T&L Group engaged in the sale of molasses within the Restricted Area for commercial extraction of sugar.  Westway again claimed that these sales constituted breach of the Agreement.  In full and final settlement of this claim for damages for breach of the Agreement,

5

the parties agreed, *inter alia*, to a cash settlement in favor of
Westway and to amend the Agreement again to add Section 4(b)(xi)
to the list of exception to the noncompetition covenants of
Section 4(a).  Section 4(b)(xi) allowed Redpath (formerly Tate &
Lyle North American Sugars Ltd.) to sell syrups produced from its
Canadian sugar refining operations to certain persons.

During 2005 and 2006, T&L Group, doing business as United
Molasses, purchased molasses from Mexican sources and delivered
and sold this molasses in Puerto Rico (within the Restricted Area
as defined by the Agreement).  Westway again claimed that these
sales constituted breach of the Agreement and in full and final
settlement of this claim of damages for breach of the Agreement,
the parties agreed, *inter alia*, to a cash settlement in favor of
Westway and to amend the Agreement again to extend the four year
term of noncompetition set forth in Section 4(a) by four (4)
months.

During 2007, T&L Group, again operating as United Molasses,
purchased molasses from a Mexican source and delivered and sold
the molasses in Puerto Rico (within the Restricted Area).
Westway claimed again that such a sale constituted breach of the
Agreement and a full and final settlement was reached.  The
parties agreed, *inter alia*, to a case settlement in favor of
Westway and to again amend the Agreement to extend the term set
forth in Section 4(a), the same section that had previously been

extended by four months in 2006, by an additional three (3) months.[2] The noncompetition Section was, hence, extended to July 19, 2007, and the Agreement was set to expire on that date.

At some point in time before July 19, 2007, T&L Group, doing business as United Molasses, purchased and took delivery of in excess of 26,600 metric tons of Mexican molasses from sugar mills in Mexico. This molasses was stored in Mexico by defendants and then, at a point in time after July 19, 2007, it was shipped to customers via three separate ships. These ships delivered the Mexican molasses to customers in Puerto Rico and Florida, within the Restricted Territory. Westway had unsuccessfully bid against defendants to obtain these same sales contracts. Westway sent an email to defendants on December 12, 2007, to place them on notice that the purchase of Mexican molasses and its ultimate sale and delivery to the Restricted Area constituted a breach of the Agreement pursuant to Section 4(a). Defendants denied that the Agreement had been breached

Plaintiffs' Complaint alleged four counts arising out of the final alleged breach: (I) Breach of Noncompetition Agreement; (II) Breach of Implied Covenant of Good Faith and Fair Dealing; (III) Unfair Trade Practices; and (IV) Injunctive Relief. The

---

[2]This Fourth Amendment reads: "In further consideration of the settlement and release set forth in this Agreement, the parties hereto agree that the term set forth in Paragraph 4(a) of the Noncompetition Agreement be extended by an additional three (3) months to July 19, 2007. Except as expressly provided in the immediately preceding sentence, the Noncompetition Agreement shall not be amended or changed by this Agreement."

parties to the Agreement consented to venue in the federal court of the State of Delaware.  Plaintiffs originally brought this suit against defendants in the United States District Court for the Eastern District of Louisiana; however, defendants moved to dismiss the Complaint for lack of personal jurisdiction and the court granted defendant's motion on September 25, 2008.  This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states or foreign states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.  Venue is proper pursuant to 28 U.S.C. § 1391(a)(1), (c), and (d), as defendants are aliens and may be sued in any judicial district.  Defendants filed the instant Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) as to all counts in the Complaint on January 12, 2009. Plaintiffs responded on February 26, 2009, and defendants replied on March 19, 2009.

## Discussion

### I. Count I: Breach of Noncompetition Agreement

Both parties claim that the language in the Agreement is unambiguous; however, each also claims that its own interpretation is the only reasonable one.  Defendants claim that any and all restrictions in the Agreement ceased to exist on July 19, 2007, when the Agreement expired, as laid out by the Fourth Amendment to the Agreement.  They then argue that their original

8

purchase of molasses from Mexico fell under an exception to noncompetition contained in the Agreement, Section 4(b)(viii),[3] and the sale of this molasses after July 19 did not violate the Agreement because it happened after the Agreement had expired. Thus, defendants conclude that the plain language of the expiration meant that they were free to sell molasses to any destination after July 19, 2007.  Conversely, plaintiffs argue that the defendants bought molasses from Mexico for ultimate delivery to the Restricted Areas, in direct violation of the plain language of provision Section 4(a) and Section 4(b)(viii). Plaintiffs additionally argue that the storage of the molasses in Mexico after its purchase was violative of the Agreement. Clearly, the parties disagree as to the intent of Section 4(b)(viii) that permitted purchase of molasses in Mexico, but limited the final destination of this molasses.

Under Illinois law, the plain and obvious meaning of the language in contracts is used to determine a contract's meaning. Brown v. Miller, 360 N.E.2d 585, 586, 45 Ill. App. 3d 970, 972 (Ill. App. Ct. 1977) (citing Chicago Home for Girls v. Carr, 133 N.E. 344, 300 Ill. 478 (1921); Serafine v. Metropolitan Sanitary District, 272 N.E.2d 716, 133 Ill. App. 2d 93 (Ill. App. Ct. 1971)).  "Illinois uses a 'four corners' rule in the

---

[3] "(viii) The T&L Group may purchase molasses from vendors in Mexico, but only for delivery to a final destination outside of the Restricted Area."

interpretation of contracts, holding that 'if the language of a
contract appears to admit of only one interpretation, the case is
indeed over.'" GreatAmerica Leasing Corp. v. Cozzi Iron & Metal,
Inc., 76 F. Supp. 2d 875, 878 (N.D. Ill. 1999) (quoting <u>Bourke v.
Dun & Bradstreet</u>, 159 F.3d 1032, 1036 (7th Cir. 1998)).  Thus,
under the "four corner rule," the court looks initially only to
the language of the contract and if the language is unambiguous,
the court should interpret the language as a matter of law.  Air
Safety, Inc., v. Teachers Realty Corp., 706 N.E.2d 882, 884 (Ill.
1999); GreatAm. Leasing, 76 F.Supp. 2d at 878.  Only when a term
is ambiguous will the Court look outside of the language of the
contract.  "A contract term is ambiguous when it may reasonably
be interpreted in more than one way[;]" however, "[t]he mere fact
that the parties disagree on some term . . . does not render the
term ambiguous."  <u>Dean Mgmt. v. TBS Constr., Inc.</u>, 790 N.E.2d
934, 939, 339 Ill. App. 3d 263, 269 (Ill. App. Ct. 2003) (citing
J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome, Ltd., 551
N.E.2d 340, 342, 194 Ill. App. 3d 744, 748 (Ill. App. Ct. 1990)).
See also Whiting Stoker Co. v. Chicago Stoker Corp., 171 F.2d
248, 250-51 (7th Cir. 1948).  Further, "a contract must be
interpreted as a whole" and "[s]entences are not isolated units
of meaning, but take meaning from other sentences in the same
document."  <u>Beanstalk Group v. Am Gen. Corp.</u>, 283 F.3d 856, 860
(7th Cir. 2002) (citations omitted).  See also Airline Stewards &

Stewardesses Ass'n, Local 550 v. TransWorld Airlines, 713 F.2d 319, 321 (7th Cir. 1983) ("[T]his court must . . . not read the sections out of context to achieve a desired result. . . .").

The parties clearly disagree as to both the meaning of Section 4(b)(viii) and the Fourth Amendment to the contract. While this disagreement is not dispositive, at this time, the Fourth Amendment and Section 4(b)(viii), within the context of the Agreement as a whole, could reasonably be interpreted in more than one way.  Defendants contend that their intent in drafting was clearly that Section 4(a) would expire on July 19, 2007, and so any molasses that they bought before this date, that could not have previously been delivered to the Restricted Area, could then be delivered anywhere without restriction.  Alternatively, plaintiffs read Sections 4(a) and 4(b)(viii) together to explicitly prohibit defendants from purchasing molasses from Mexico before July 19, 2007, for *ultimate* delivery to the Restricted Area.  Thus, it would be inappropriate for this Court to dismiss the Breach of Contract claim at this stage in the proceedings.  Plaintiffs have adequately pled Count I and the Motion to Dismiss Count I of the Complaint is denied.

## II. Count II: Breach of Implied Covenant of Good Faith and Fair Dealing

Defendants claim that Count II of plaintiffs' Complaint is duplicative of their breach of contract claim and, as such,

should be dismissed.  Additionally, defendants argue that to plead a contract claim of breach of duty of good faith and fair dealing, a plaintiff must allege that one party did not properly exercise discretion under the contract.  Plaintiffs argue, in response, that defendants had discretion under the Agreement and that they did not reasonably exercised this discretion when they bought Mexican molasses and later sold it in Puerto Rico and Florida.  The Illinois Supreme Court has held that "breach of the covenant of good faith and fair dealing is not an independent cause of action under Illinois law except 'in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policy holder.'"  Aps Sports Collectibles, Inc. v. Sports Time, Inc., 299 F.3d 624, 628 (7th Cir. 2002) (quoting Voyles v. Sandia Mortgage Corp., 751 N.E.2d 1126, 1131, 196 Ill. 2d 288, 296 (Ill. 2001)).  Further, while the duty of good faith and fair dealing has been held to be an implied part of every contract, it is "an aid to interpretation, not a source of contractual duties or liability under Illinois law."  Zeidler v. A & W Rests., Inc., 301 F.3d 572, 575 (7th Cir. 2002) (citing Beraha v. Baxter Health Care Corp., 956 F.2d 1436, 1443-44 (7th Cir. 1992); Cramer v. Insurance Exch. Agency, 675 N.E.2d 897, 903, 174 Ill. 2d 513 (Ill. 1996)).  See also LaScola v. US Sprint Communications Corp., 946 F.2d 559, 565 (7th Cir. 1991) ("[The obligation to deal in good faith] is in aid and furtherance of

12

other terms of the agreement of the parties. It does not create an independent cause of action." (quoting Gordon v. Matthew Bender & Co., 562 F. Supp. 1286, 1289 (N.D. Ill. 1983))). Overall, "[a] claim for breach of the duty to deal in good faith that merely reiterates the allegations of a separate breach of contract claim should be dismissed." Codest Eng'g v. Hyatt Int'l Corp., 954 F. Supp. 1224, 1233 (N.D. Ill. 1996) (citations omitted).

Plaintiffs' separate breach of implied covenant of good faith and fair dealing claim mimics Count I of their Complaint, the breach of contract claim.  In their Complaint, plaintiffs state "[b]y the acts alleged above, Defendants have breached the covenant of good faith and fair dealing implied in every contract, such that each party impliedly agrees not to do anything to destroy or injure the right of the other to receive the benefits of the contract."  In alleging this claim, plaintiffs point to the same provisions of the Agreement and make the same arguments regarding defendants' breach as they allege in Count I of the Complaint.[4]  Thus, the claim is duplicative of the breach of contract claim and cannot be pled as a separate claim.

We recognize that, in certain instances, a breach of good

---

[4]In plaintiffs' response, they state in support of Count II "Tate & Lyle could not exercise discretion to purchase Mexican molasses, and then hold the molasses in storage in Mexico until after July 19, 2007 (a breach of the Agreement in itself), and then 'ultimately deliver' it to the final destinations within North America (Puerto Rico and Florida)."  Pl. Resp. 17. This is essentially an identical claim as that made as to Count I.

faith and fair dealing may be brought as part of a breach of contract claim, where "a party who does not properly exercise contractual discretion breaches the implied covenant of good faith and fair dealing that is in every contract." <u>Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.</u>, 815 N.E.2d 911, 916, 352 Ill. App. 3d 160, 165-166 (Ill. App. Ct. 2004) (citing Diamond v. United Food & Commercial Workers Union Local 881, 768 N.E.2d 865, 971, 329 Ill. App. 3d 519, 527 (Ill. App. Ct. 2002)). However, this form of contract claim requires that the plaintiff plead the existence of contractual discretion. Mid-West Energy Consultants, 815 N.E. 2d at 916 (citing Northern Trust Co. v. VIII South Michigan Associates, 657 N.E.2d 1095, 1104-05, 276 Ill. App. 3d 355, 367-68 (Ill. App. Ct. 1995)).

In attempting to set forth a separate claim, plaintiffs contend for the first time in their Response to Defendants' Motion to Dismiss that defendants had the requisite discretion necessary because qualifying for an exception in Section 4(b) was a condition precedent that required discretion. The "discretionary provision" to which the plaintiffs refer was not a condition precedent to the contract, as they now argue. "A condition precedent is defined as a condition in which performance by one party is required before the other party is obligated to perform." Midwest Builder Distrib. v. Lord & Essex, 891 N.E.2d 1, 23-24, 383 Ill. App. 3d 645, 668 (Ill. App. Ct.

14

2007) (citing Regency Commercial Associates, LLC v. Lopax, Inc., 869 N.E.2d 310, 321-22, 373 Ill. App. 3d 270, 282 (Ill. App. Ct. 2007)).  In line with plaintiffs' interpretation of the Agreement in Count I, once defendants bought Mexican molasses, they were then banned from delivering this specific molasses to the Restricted Area at any time.  Plaintiffs have not alleged a situation in which defendants were to "use reasonable efforts to bring about a condition precedent."  Dayan v. McDonald's Corp., 125 Ill. App. 3d 972, 990 (Ill. App. Ct. 1984).

Finally, plaintiffs substantially rely upon Beraha v. Baxter Health Care Corp., 956 F.2d 1436 (7th Cir. 1992), where a good faith and fair dealing claim proceeded because there was a condition precedent on which defendant had to act to perform the contract.[5]  However, in Beraha, the plaintiff specifically alleged violations of express and implied covenants of good faith and fair dealing in the licensing agreement as its contract claim and did not allege a separate breach of contract action.[6]  In analyzing the claim, the court stated that "[u]nder Illinois law, the covenant of good faith and fair dealing has never been an independent source of duties for the parties to a contract" and

---

[5]The court in Beraha found that the contract had a condition precedent because under a provision of the contract, "[Defendant's] obligation to pay royalties did not arise unless Defendant developed and sold the Beraha needle." Beraha v. Baxter Health Care Corp., 956 F.2d 1436, 1444 (7th Cir. 1992).

[6]Similarly, in Midwest Builder the court was analyzing the good faith claim as the only contract claim and the contract involved a condition precedent.  891 N.E.2d at 23-24.

"the covenant guides the construction of explicit terms in an agreement." Id. at 1443.  We cannot find that this provides support for the plaintiffs in the instant action to essentially bring a second breach of contract claim.  We recognize the implied duty of good faith and fair dealing in so far as it aids in the interpretation of the contract and will use it as such.  However, Count II will be dismissed as duplicative of Count I.

### III. Count III: Unfair Trade Practices

Defendants argue that plaintiffs' Complaint does not provide them with fair notice of the claim, as the Complaint does not specifically state that the plaintiffs are proceeding under the Illinois Consumer Fraud and Deceptive Business Practices Act ("the Consumer Fraud Act"), 815 ILL. COMP. STAT. 505/2.  Defendants also contend that plaintiffs have failed to state a claim under the Consumer Fraud Act because they do not plead a "consumer nexus" as required under Illinois law when the plaintiff asserting an unfair trade practices claim is a business.  Plaintiffs argue that their Complaint sufficiently lays out the elements of a claim under the Consumer Fraud Act because it alleges that defendants engaged in unfair conduct by "unilaterally reading the Agreement to allow purchase of Mexican molasses before July 19, 2007, for sale and delivery into the Restricted Area after this date."  Pl. Resp. 20.  Further, plaintiffs argue that pursuant to the standard set out by Windy

16

City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.,
for "unfair conduct," they have adequately alleged their claim by
alleging that the practice offends public policy, is immoral,
unethical, oppressive or unscrupulous, and causes substantial
injury to consumers.  536 F.3d 663, 669 (7th Cir. 2008).

    The Illinois Consumer Fraud Act makes unlawful "unfair or
deceptive acts or practices, including but not limited to the use
or employment of any deception, fraud, false pretense, false
promise, misrepresentation or the concealment, suppression or
omission of any material fact…in the conduct of any trade or
commerce . . . ." 815 ILL. COMP. STAT. 505/2.  As defendants
contend, when the plaintiff is a business, and not acting as a
consumer, courts generally require an allegation of consumer
nexus between the alleged fraudulent conduct and consumer
protection concerns as an essential element of a Consumer Fraud
claim.  Lake County Grading Co. of Libertyville v. Advance
Mechanical Contractors, Inc., 654 N.E.2d 1109, 1115, 275 Ill.
App.3d 452, 458-59 (Ill. App. Ct. 1995); Nakajima All Co. v. SL
Ventures, Corp., No. 00-6594, 2001 U.S. Dist. LEXIS 7535, 2001 WL
641415, at *8-9 (N.D. Ill. June 4, 2001); Commonwealth Ins. Co.
v. Stone Container Corp., No. 99- 8471, 2001 U.S. Dist. LEXIS
11100, 2001 WL 477151, at *14-15 (N.D. Ill. May 3, 2001) (citing
J.C. Whitney & Co. v. Renaissance Software Corp., No. 99-3714,
2000 U.S. Dist. LEXIS 6180, 2000 WL 556610, at *14 (N.D.Ill.

17

April 21, 2000), adopted in relevant part, 98 F. Supp. 2d 981 (N.
D. Ill. 2000)); Anchor Mortg. Corp. v. Certified Credit
Reporting, Inc., No. 00-4248, 2000 U.S. Dist. LEXIS 16867, 2000
WL 1700147, at *5 (N.D. Ill. Nov. 8, 2000).  The court in
Commonwealth Ins. Co. identified two possible definitions of a
"consumer nexus" that plaintiffs must alleged to have stated a
claim: (1) it suffered some harm as a result of conduct that was
directed to the market or that otherwise implicates consumer
protection concerns; or (2) it was acting as a consumer of the
defendant and the fraudulent conduct amounted to more than a mere
breach of contract.[7]  2001 U.S. Dist. LEXIS 11100, at * 14
(citing Zimmerman v. Waste Ltd., II, No. 96-5048, 1997 U.S. Dist.
LEXIS 3640, 1997 WL 159188, at *4 (N.D. Ill. March 26, 1997);
J.C. Whitney, 2000 U.S. Dist. LEXIS 6180, at *14, n. 16).
Plaintiffs have alleged that defendants misread the contract
unilaterally and intended to deceive plaintiffs by purchasing the
Mexican molasses with an intention to sell it after July 19,
2007.  In essence, plaintiffs argue that defendants promised not
to perform actions that they intended to perform, essentially the
same argument put forth in the breach of contract claim.  See

---

[7]The court in J.C. Whitney & Co. v. Renaissance Software Corp., No.
CITE, 2000 U.S. Dist. LEXIS 6180, 2000 WL 556610 (N.D. Ill. Apr. 19, 2000),
discusses a possible split in authority as the essential elements of
allegations by a business-consumer under the Consumer Fraud Act claim.  Id. at
*47-48.  However, as plaintiffs have not pled that they are consumers of
defendants' good and services, and are thus business-plaintiffs, the split is
not directly implicated in this matter.

Central Diversey M.R.I. Center, Inc. v. Medical Management Sciences, Inc., 952 F. Supp. 575, 578 (1996) (finding that allegations that defendant promised to perform service that it never intended to perform was essentially a contract claim). Plaintiffs have not alleged that they were acting as a consumer and there is no mention of consumers or the impact upon them in the Complaint itself.[8]  We cannot find that the consumer nexus has been pled by a broad statement in the Response to the Motion to Dismiss that an unilateral interpretation will lead to "injury to consumers by upsetting the settled expectations and good business practices undergirding commercial transactions generally."  Pl. Resp. 21.  Additionally, the standard plaintiffs cite in Windy City was not for business plaintiffs, but for business consumers who were the recipients of services from the defendants and, as such, did not need to plead a consumer nexus. See Id. at 672 (holding that the pleading requirement were met where defendants allegedly used unfair conduct to lease equipment to "business customers.").  Thus, as plaintiffs have not alleged that they were consumers and have not alleged a consumer nexus in their Complaint as required by Illinois law, Count III of the

---

[8]Under the Consumer Fraud Act, a "consumer" is one "who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILL. COMP. STAT.  505/1(e).

Complaint is dismissed.[9]

## IV. Count IV: Injunctive Relief

Defendants argue that plaintiffs cannot plead injunctive relief as a separate cause of action and that injunctive relief is unavailable to plaintiffs in this action.  Plaintiffs contend that they do not seek to assert injunctive relief as a separate cause of action, but have pled Count IV as a prayer for relief that establishes the basis for injunctive relief as remedy for Counts I-III.  This Court recognizes that a claim for injunctive relief is not a separate cause of action in the Complaint, but an equitable remedy.  See Walker v. Bankers Life & Cas. Co., No. 06-6906, 2007 U.S. Dist. LEXIS 22818, 2007 WL 967888, at *11 (N.D. Ill. Mar. 28, 2007) ("Injunction is an equitable remedy, not a separate cause of action.") (citation omitted).

While the parties' Agreement does contain a provision providing for injunctive relief in the event of breach, plaintiffs incorrectly pled injunctive relief as a separate cause of action.  This Court will not dismiss the prayer for injunctive relief as a remedy to the remaining breach of contract claim of Count I, but cannot allow a separate "count" to proceed.  See Noncompetition Agreement, Section 5(b).  Thus, while Count IV is dismissed without prejudice, plaintiffs' prayer for injunctive

---

[9]As this Court has found that an essential element of the claim has not been pled, we will not address whether the defendants had fair notice of the claim itself.

relief, in keeping with the relevant provision in the Agreement, remains as a separate and distinct remedy that the plaintiffs are seeking.

## Conclusion

For the reasons set forth in this Memorandum, the Motion to Dismiss as to Counts II, III, and IV[10] is granted and denied in all other regards.  An appropriate Order follows.

---

[10]This Court again specifies that plaintiffs may proceed with their prayer for injunctive relief as a possible remedy to the remaining claim.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WESTWAY HOLDINGS CORPORATION and WESTWAY TRADING CORPORATION, | : : : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : | No. 08-cv-841 |
| TATE AND LYLE PLC, TATE & LYLE NORTH AMERICAN SUGARS LTD., and TATE & LYLE INDUSTRIES | : : : : | |
| Defendants. | : | |

## ORDER

AND NOW, this  13th  day of May, 2009, upon consideration of
Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6)
(Doc. No. 7), Plaintiffs' Response in Opposition (Doc. No. 11),
and Defendants' Reply thereto (Doc. No. 16), for reasons set
forth in the attached Memorandum, it is hereby ORDERED that the
Motion is GRANTED in part and DENIED in part, as follows:
Defendants' Motion is GRANTED as to Count II, Count III and Count
IV, and thus, Count II, Count III and Count IV[1] are DISMISSED.
Defendants' Motion is DENIED in all other regards.

BY THE COURT:


s/J. Curtis Joyner
J. CURTIS JOYNER, J.

---

[1]As noted in the attached Memorandum, plaintiffs may proceed upon their
prayer for injunctive relief as a remedy in this matter