IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| WESTWAY HOLDINGS CORPORATION and WESTWAY TRADING CORPORATION, : : : : | |
| Plaintiffs, : | CIVIL ACTION |
| v. : | No. 08-cv-841 |
| TATE AND LYLE PLC, TATE & LYLE NORTH AMERICAN SUGARS LTD., and TATE & LYLE INDUSTRIES : : : : | |
| Defendants. : | |

### **MEMORANDUM and ORDER**

**Joyner, J.**                                                                                   **October 21, 2009**

Before this Court is Plaintiffs' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) (Doc. Nos. 23, 24, 25), Defendants' Response in Opposition (Doc. Nos. 28, 29, 30), and Plaintiffs' Reply thereto (Doc. No. 31). For the reasons set forth in the following memorandum, we will grant Plaintiffs' Motion.

### **Background**[1]

Plaintiffs, Westway Holdings Corporation and Westway Trading Corporation, filed their Complaint against Defendants Tate and Lyle PLC, Tate & Lyle North American Sugars Ltd., and Tate & Lyle

---

[1] In analyzing a motion to for summary judgment, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).

1

Industries, on November 12, 2008, in the District Court of Delaware.  Plaintiffs (collectively "Westway") are Delaware corporations with their principle places of business in New Orleans, Louisiana.  Defendants Tate and Lyle PLC ("T&L") and Tate & Lyle Industries Ltd. ("TLI") are corporations organized and existing under the laws of England and Wales, while Defendant Tate & Lyle North America Sugars Ltd. ("Redpath") is a corporation organized and existing under the laws of the Province of New Brunswick, Canada.

Westway and T&L are both in the business of trading molasses worldwide.  Prior to December 19, 2002, the United Molasses Company ("United Molasses") was a wholly owned subsidiary of T&L and engaged in the business of trading molasses, bulk liquid storage and production of animal feed in North and Central America.  On December 19, 2002, Westway Holdings Corporation purchased all of the outstanding capital stock of United Molasses from T&L and United Molasses became a wholly owned subsidiary of Westway Holdings.  United Molasses was then renamed Westway Trading Corporation.  As part of the stock purchase, the parties entered into the Non-competition Agreement ("the Agreement") at issue in this case.  The Agreement is incorporated into the Complaint and lays out the parameters of the non-competition arrangement between Westway and T&L.

Shortly thereafter, between December 2002 and March 2003,

T&L participated in four purchases and shipments of molasses that Westway claimed originated in the "Restricted Area," as defined by the Agreement. They also contracted to purchase another shipment of molasses from a Restricted Area, Florida, in October or November of 2003. Westway then claimed that the purchases/shipments and contracts to purchase in the Restricted Area constituted a breach of the Non-competition Agreement. The parties settled this dispute and in full and final settlement of Westway's damages; the parties agreed, *inter alia*, to a case settlement in favor of Westway and to amend the Agreement to add Section 4(b)(x) to the list of exceptions to the non-competition covenants of Section 4(a).

After this provision was in place, Westway again alleged that T&L Group engaged in the sale of molasses within the Restricted Area for commercial extraction of sugar. In full and final settlement of this claim for damages for breach of the Agreement, the parties agreed, *inter alia*, to a cash settlement in favor of Westway and to amend the Agreement again to add Section 4(b)(xi) to the list of exception to the non-competition covenants of Section 4(a). Section 4(b)(xi) allowed Redpath (formerly Tate & Lyle North American Sugars Ltd.) to sell syrups produced from its Canadian sugar refining operations to certain persons.

During 2005 and 2006, T&L Group, doing business as United

Molasses, purchased molasses from Mexican sources and delivered and sold this molasses in Puerto Rico.  Westway again claimed that these sales constituted breach of the Agreement and in full and final settlement of this claim of damages for breach of the Agreement, the parties agreed, *inter alia*, to a cash settlement in favor of Westway and to amend the Agreement again to extend the four year term of non-competition set forth in Section 4(a) by four (4) months.

During 2007, T&L Group, again operating as United Molasses, purchased molasses from a Mexican source and delivered and sold the molasses in Puerto Rico.  Westway claimed again that such a sale constituted breach of the Agreement and a full and final settlement was reached.  The parties agreed, *inter alia*, to a case settlement in favor of Westway and to again amend the Agreement to extend the term set forth in Section 4(a), the same section that had previously been extended by four months in 2006, by an additional three (3) months.[2]  The non-competition Section was, hence, extended to July 19, 2007, and the Agreement was set to expire on that date.

At some point in time before July 19, 2007, T&L Group, doing business as United Molasses, purchased and took delivery of in

---

[2] This Fourth Amendment reads: "In further consideration of the settlement and release set forth in this Agreement, the parties hereto agree that the term set forth in Paragraph 4(a) of the Noncompetition Agreement be extended by an additional three (3) months to July 19, 2007.  Except as expressly provided in the immediately preceding sentence, the Noncompetition Agreement shall not be amended or changed by this Agreement."

excess of 26,600 metric tons of Mexican molasses from sugar mills in Mexico. This molasses was stored in Mexico by Defendants and then, at a point in time after July 19, 2007, it was shipped to customers in Puerto Rico and Florida, within the Restricted Area. Westway sent an email to Defendants on December 12, 2007, claiming that the purchase of Mexican molasses and its ultimate sale and delivery to the Restricted Area constituted a breach of the Agreement pursuant to Section 4(a). Defendants denied that the Agreement had been breached

    Plaintiffs' Complaint alleged four counts arising out of the final alleged breach: (I) Breach of Noncompetition Agreement; (II) Breach of Implied Covenant of Good Faith and Fair Dealing; (III) Unfair Trade Practices; and (IV) Injunctive Relief. Defendants filed a Motion to Dismiss on January 12, 2009. The Court dismissed Counts II, III, and IV of the Complaint on May 13, 2009. Plaintiffs filed the instant Motion for Summary Judgment on August 14, 2009. Defendants responded on September 22, 2009. Plaintiffs replied on October 13, 2009.

## **Standard**

    Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. Material facts are those that may affect the outcome of the suit.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden."  Kaucher v. County of Bucks, 456 F.3d 418, 423 (3d Cir. 2006) (quoting Wetzel v. Tucker, 139 F.3d 380, 383 n. 2 (3d Cir. 1998)).

In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).  However, there must be more than a "mere scintilla" of evidence in support of the non-moving party's position to survive the summary judgment stage.  Anderson, 477 U.S. at 252.  "[A]n inference based on speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

In assessing the contract claims at hand, this Court will use Illinois law, as specified by the choice of law provision within the Non-competition Agreement between the parties. "Delaware courts will generally honor a contractually-designed choice of law provision as long as the jurisdiction selected bears some material relationship to the transaction." J.S. Alberici Construction Co. v. Mid-West Conveyor Co., 750 A.2d 518, 520 (Del. 2000).

## Discussion

Both parties agree on the key material facts in this case. T&L purchased molasses while the Non-Competition Agreement between the parties was still in force, under an exception in the Agreement which allowed it to purchase molasses in Mexico if the final destination of the molasses was outside of the Restricted Area. After the Agreement expired on July 19, 2007, T&L sold the molasses which was purchased in Mexico before the Agreement expired, within the Restricted Zone.

The key issue on which the parties disagree is how the language of the Agreement should be interpreted. When parties to a contract dispute the meaning of a contract's terms, the court must determine whether those terms are clear and unambiguous. Pennbarr Corp. v. Ins. Co. Of N. Am., 976 F.2d 145, 149 (3d Cir. 1992). If those terms are clear, then the court can construe

7

them as a matter of law.  Cooper Labs., Inc. v. Int'l surplus Lines Ins. Co., 802 F.2d 667, 671 (3d Cir. 1986).

Both parties claim that the language in the Agreement is unambiguous.  Defendants claim that any and all restrictions in the Agreement ceased to exist on July 19, 2007, when the Agreement terminated.  They also argue that their original purchase of molasses from Mexico fell under an exception in the Agreement, Section 4(b)(viii),[3] and the sale of this molasses after July 19, 2007 did not violate the Agreement because it happened after the Agreement expired.  Thus, Defendants conclude that the plain language of the expiration meant that they were free to sell molasses to any destination after July 19, 2007. Conversely, Plaintiffs argue that the Defendants bought molasses from Mexico for ultimate delivery to the Restricted Area, in direct violation of the plain language of Sections 4(a) and 4(b)(viii).  Plaintiffs also argue that the storage of the molasses in Mexico after its purchase was violative of the Agreement.

Under Illinois law, the plain and obvious meaning of the language in contracts is used to determine a contract's meaning. Brown v. Miller, 360 N.E.2d 585, 586 (Ill. App. Ct. 1977) (citing Chicago Home for Girls v. Carr, 133 N.E.2d 344 (1921); Serafine

---

[3] "(viii) The T&L Group may purchase molasses from vendors in Mexico, but only for delivery to a final destination outside of the Restricted Area."

8

v. Metropolitan Sanitary District, 272 N.E.2d 716 (Ill. App. Ct. 1971)). "Illinois uses a 'four corners' rule in the interpretation of contracts, holding that 'if the language of a contract appears to admit of only one interpretation, the case is indeed over.'" GreatAmerica Leasing Corp. v. Cozzi Iron & Metal, Inc., 76 F. Supp. 2d 875, 878 (N.D. Ill. 1999) (quoting Bourke v. Dun & Bradstreet, 159 F.3d 1032, 1036 (7th Cir. 1998)). Thus, under the "four corner rule," the court looks initially only to the language of the contract and if the language is unambiguous, the court should interpret the language as a matter of law. Air Safety, Inc., v. Teachers Realty Corp., 706 N.E.2d 882, 884 (Ill. 1999); GreatAmerica Leasing, 76 F. Supp. 2d at 878. Only when a term is ambiguous will the Court look outside of the language of the contract. "A contract term is ambiguous when it may reasonably be interpreted in more than one way[;]" however, "[t]he mere fact that the parties disagree on some term . . . does not render the term ambiguous." Dean Mgmt. v. TBS Constr., Inc., 790 N.E.2d 934, 939 (Ill. App. Ct. 2003) (citing J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome, Ltd., 551 N.E.2d 340, 342 (Ill. App. Ct. 1990)); see also Whiting Stoker Co. v. Chicago Stoker Corp., 171 F.2d 248, 250-51 (7th Cir. 1948). Further, "a contract must be interpreted as a whole" and "[s]entences are not isolated units of meaning, but take meaning from other sentences in the same document." Beanstalk Group v.

9

Am Gen. Corp., 283 F.3d 856, 860 (7th Cir. 2002) (citations omitted); see also Airline Stewards & Stewardesses Ass'n, Local 550 v. TransWorld Airlines, 713 F.2d 319, 321 (7th Cir. 1983) ("[T]his court must . . . not read the sections out of context to achieve a desired result. . . .").

The parties clearly disagree as to both the meaning of Section 4(b)(viii) and the Fourth Amendment to the contract. However, this disagreement is not dispositive. Defendants contend that their intent in drafting was clearly that Section 4(a) would expire on July 19, 2007, and so any molasses that they bought before this date, that could not have previously been delivered to the Restricted Area, could then be delivered anywhere without restriction. Alternatively, Plaintiffs read Sections 4(a) and 4(b)(viii) together to explicitly prohibit the purchase of molasses from Mexico before July 19, 2007, for ultimate delivery to the Restricted Area. The Court finds that based on the plain language of the contract, Defendants violated the agreement and that summary judgment should be granted in favor of Plaintiffs.[4]

Before July 19, 2007, T&L purchased and stored more than

---

[4] While Defendants attempt to argue that the Court decided that the Agreement was ambiguous, this is not a correct characterization of the Court's opinion. At the motion to dismiss phase, we were simply tasked with determining whether Plaintiffs had established a claim. At that point, the Court merely determined that Defendants' reading of the contract was not the only possible reading and because Plaintiffs' reading was viable, they stated a claim on which relief could be granted. However, upon further consideration upon this Motion for Summary Judgment, we find that the contract is plain on its face.

26,000 metric tons of Mexican molasses. T&L stored the molasses in Mexico until after the agreement expired and then shipped it to customers within what both parties agree was the Restricted Area under the terms of the Agreement. Based on Defendants' conduct, two violations of the non-competition agreement occurred.

First, T&L directly violated the agreement by storing the molasses. Section 4(a)(i) of the Agreement specifically prohibits, "the business of the purchase, sale and/or *storage* of molasses . . ." (emphasis added). Defendants' storage of molasses in the Restricted Area prior to July 19, 2007, constituted a violation of the Agreement under the clear and unambiguous language of the Agreement. The Agreement contained no exception which would excuse the storage of molasses in Mexico. Defendants have not even disputed the fact that they purchased and stored molasses in violation of the Agreement.

Defendants also violated the Agreement by selling molasses in the Restricted Zone after July 19, 2007. Section 4(a)(i) of the Agreement also specifically prohibits the purchase of molasses in Mexico. Under the language of the Agreement, T&L's purchase of molasses in Mexico prior to the termination of the Agreement constitutes a violation of the Agreement. However, an exception was added to the Agreement in Section 4(b)(viii) which says, "The T&L Group may purchase molasses from vendors in

Mexico, but only for delivery to a *final destination* outside of the Restricted Area" (emphasis added). The only way for Defendants' purchase to not constitute a violation of the Agreement is if it fell within this exception.

The initial purchase of the molasses took place while the Agreement was still in effect. Therefore, the purchase and the subsequent use of the molasses is governed by the Agreement. The exception in Section 4(b)(viii) of the Agreement explicitly says that T&L is allowed to purchase from vendors in Mexico only if the final destination is outside of the Restricted Area. In order for T&L to avail itself of the exception and thereby excuse its conduct, it must have sold the molasses in accordance with the terms of the Agreement. Since the Section 4(b)(viii) exception was the only reason that the initial purchase of the molasses did not breach the Agreement, the terms of the exception must continue to apply to the molasses all the way through its sale. The lack of a survival clause is irrelevant because the breach of the Agreement and the application of the exception occurred while the Agreement was still in force. Because T&L did not meet all of the exception's requirements, it cannot use the exception to argue that its conduct prior to the termination of the Agreement did not violate the Agreement. In this case, the ultimate sale of the molasses was inside of the Restricted Area and therefore in violation of the Agreement.

Sections 4(a) and 4(b)(viii) cannot reasonably be read together to mean that Defendants could purchase and/or store as much molasses as they wanted within the Restricted Area prior to the termination of the Agreement, so long as they waited until after the termination to sell the molasses within the Restricted Area. Reading the Agreement in this manner would render Section 4(a) virtually meaningless which is not a proper method of interpretation under Illinois law. See Fid Nat'l Title Ins. Co. Of N.Y. v. Westhaven Props. P'ship, 898 N.E.2d 1051, 1063-64 (Ill. App. Ct. 2007) ("[The court] will not interpret a contract in a manner that would nullify or render provisions meaningless.").

Additionally, as noted by Plaintiffs, this is not Defendants first time breaching the Agreement; this is in fact Defendants' fourth violation. These violations show active bad faith on the part of Defendants. Defendants' pattern of repeatedly breaching the Agreement further proves that this was not a mere accident or disagreement as to interpretation. Defendants have repeatedly attempted to make an end run around the Agreement and this is just their most recent attempt.

## **Conclusion**

For the reasons set forth in this Memorandum, the Motion for Summary Judgment is granted. An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WESTWAY HOLDINGS CORPORATION and WESTWAY TRADING CORPORATION, : : : : | |
| Plaintiffs, : : | CIVIL ACTION |
| v. : : | No. 08-cv-841 |
| TATE AND LYLE PLC, TATE & LYLE NORTH AMERICAN SUGARS LTD., and TATE & LYLE INDUSTRIES : : : : | |
| Defendants. : | |

### ORDER

AND NOW, this 21st day of October, 2009, upon consideration of Plaintiffs' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) (Doc. Nos. 23, 24, 25), Defendants' Response in Opposition (Doc. Nos. 28, 29, 30), and Plaintiffs' Reply thereto (Doc. No. 31), for reasons set forth in the attached Memorandum, it is hereby ORDERED that the Motion is GRANTED.

Further, it is hereby ORDERED that Plaintiffs are to submit detailed records regarding any damages sustained within thirty (30) days of this Order and Defendant shall have fourteen (14) days to respond.

BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER, J.